**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Spencer Ung,

           Plaintiff,

v.

Universal Acceptance Corporation,

           Defendant.

Civ. No. 15-127 (RHK/FLN)
**MEMORANDUM OPINION AND ORDER**

---

Michael S. Hilicki, Keith J. Keogh, Keogh Law, Ltd., Chicago, Illinois, Peter F. Barry, Patrick J. Helwig, Barry & Helwig, LLC, Minneapolis, Minnesota, for Plaintiff.

David L. Hartsell, Sarah A. Zielinski, McGuireWoods LLP, Chicago, Illinois, Burt M. Rublin, Philip N. Yannella, Daniel JT McKenna, Ballard Spahr LLP, Philadelphia, Pennsylvania, Patrick C. Summers, DeWitt, Mackall, Crounse & Moore, S.C., Minneapolis, Minnesota, for Defendant.

---

In this action, Plaintiff Spencer Ung alleges that Defendant Universal Acceptance Corporation ("Universal") made unauthorized calls to his cell phone, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* Presently before the Court is Ung's Motion for Class Certification. For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

Universal is the financing arm of Interstate Auto Group, Inc., d/b/a CarHop ("CarHop"), an Edina, Minnesota company that sells used cars nationwide to people with poor or no credit. A person interested in purchasing a CarHop vehicle must submit a

financing application listing credit references and the name of his or her landlord.  This provides Universal with contact information for persons who could pass messages to the buyer if he or she fell behind on the vehicle's payments.

The named plaintiff here, Spencer Ung, was one such individual whose contact information was provided by a car buyer.  In 2013, Joseph Holley purchased a Kia Sorrento from a CarHop location in Crystal, Minnesota; he provided Ung's name and cell-phone number, listing Ung as his landlord.  Holley eventually fell behind on his payments and Universal began placing calls to Ung.  In total, it called him twelve times between June and October 2014.  Ung eventually threatened Universal with suit if it did not stop calling.

Ung carried through on his threat on February 9, 2015, commencing this putative class action alleging that all of the calls he received from Universal were made with an autodialer and without his consent, thereby transgressing the TCPA.[1]  His Complaint seeks statutory damages for negligent (Count I) and willful (Count II) violations of the statute, as well as an injunction preventing Universal from making calls "in violation of the TCPA."  He has now moved for an order certifying the following class:

> All persons in the United States to whose cellular telephone number [Universal] placed a non-emergency telephone call using the same software and/or equipment it used to call Plaintiff between July 1, 2012, and February 9, 2015, where the person was identified as a landlord or other reference in UAC's system.

---

[1] In pertinent part, the TCPA renders it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

Universal opposes Ung's Motion, arguing class certification is inappropriate because, among other things, individualized issues predominate over questions common to the class.[2] The Motion has been thoroughly briefed and is ripe for disposition.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "one or more members of a class may sue . . . as representative parties on behalf of all members." Fed. R. Civ. P. 23(a).  To do so, four requirements set forth in Rule 23(a), and at least one of three categories in Rule 23(b), must be satisfied.  E.g., Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997) ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."). Rule 23(a) requires that (i) the class is so numerous that joinder of all members is impracticable, (ii) questions of law or fact are common to the class, (iii) the claims of the representative party are typical of the claims or defenses of the class, and (iv) the representative will fairly and adequately protect the class's interests.  See Amchem, 521 U.S. at 613 (describing these as numerosity, commonality, typicality, and adequacy). Rule 23(b) requires *inter alia* that (i) the defendant have acted in a way applying generally to the class, such that "final injunctive relief . . . is appropriate respecting the class as a whole," or (ii) common questions of law or fact predominate over individual questions, making a class action superior "for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(2), (3); Amchem, 521 U.S. at 614-15.

---

[2] Universal also argues certification should be denied because the identities of all class members are not clearly ascertainable from its records.  Because the Court disposes of Ung's Motion on other grounds, it need not and does not reach that issue.

"In order to obtain class certification, [the named] plaintiff has the burden of showing that . . . the requirements of Rule 23 are met." Coleman v. Watt, 40 F.3d 255, 258-59 (8th Cir. 1994). Because class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011), the Court must undertake a "[r]igorous analysis" to determine whether Rule 23 has been satisfied, Powers v. Credit Mgmt. Servs., 776 F.3d 567, 570 (8th Cir. 2015), sometimes overlapping with an analysis of the merits of the plaintiff's claim, Dukes, 564 U.S. at 351.

## ANALYSIS

By Ung's reckoning, the instant Motion is easily resolved. He contends class certification "is normal in litigation under § 227 [of the TCPA]" (Reply at 1 (citing Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc., 821 F.3d 992, 998 (8th Cir. 2016)), and this is a "textbook case" for certification because the claims of "hundreds of thousands of class members" present common issues, since they "arise under the same law and stem from the same facts – namely, [Universal's] standard debt collection practice of using its computerized calling system to call non-debtor third parties on their cell phones" (Pl. Mem. at 1 (emphasis deleted)). He cites a bevy of TCPA cases certified as class actions and argues this case is similar, easily satisfying the requisites of Rule 23(a) and *both* of the aforementioned categories of Rule 23(b) (that is, appropriate class-wide injunctive relief, or predominant common question of law or fact).

In response, Universal does not quibble with the notion that numerous TCPA cases have been certified as class actions. Nor does it dispute that Ung has satisfied at

- 4 -

least some of the prerequisites of Rule 23(a), specifically, numerosity, typicality, and adequacy. It argues, however, that Ung fails on the "commonality" prong of Rule 23(a)(2), and by the same token, fails to show that common issues predominate under Rule 23(b)(3). In particular, it asserts that certain class members consented to be called on their cell phones, providing a complete defense to liability. And because consent must be independently assessed for each class member, Universal argues the issue cannot be resolved with "common" proof, thereby defeating certification. The Court agrees.

As noted above, a plaintiff alleging he received an autodialed call on his cell phone in violation of the TCPA must show the call was placed without his consent. See 47 U.S.C. § 227(b)(1)(A)(iii) (rendering it unlawful "to make any call (*other than a call . . . made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service") (emphasis added). Consent may be provided orally (save for telemarketing calls, which are not at issue here) or in writing, as long as it is "express." See, e.g., Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255 (11th Cir. 2014) (quoting statement of Sen. Hollings, 137 Cong. Rec. 30,822 (1991)). Further, consent "may be obtained by and conveyed through an intermediary." Baisden v. Credit Adjustments, Inc., 813 F.3d 338, 343 (6th Cir. 2016); accord, e.g., In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Pet. for Expedited Declaratory Ruling, 29

FCC Rcd. 3442, 3444 (Mar. 27, 2014) ("[T]he TCPA does not prohibit a caller . . . from obtaining the consumer's prior express consent through an intermediary.").[3]

Here, Universal has proffered at least some evidence suggesting that a portion of the putative class provided consent to be called. For example, one of the references Holley provided to Universal (in addition to Ung), a woman named Trina, took a call from Universal and expressly advised the company that it could call her regarding Holley's account. (Reeves Decl. ¶ 42 & Exs. A-E.)[4] Although this does not necessarily confirm that Trina had provided *prior* consent, it would be reasonable to *infer* that such consent had in fact been provided. And, of course, each *subsequent* call to Trina would have been placed with her "prior express consent," namely, her verbal authorization

---

[3] Ung claims intermediary consent "has only been allowed in connection with a group texting platform." (Reply at 9.) He is incorrect. See, e.g., Baisden, 813 F.3d at 345-48; see also In re GroupMe, Inc., 29 FCC Rcd. at 3444 (noting a "caller" may obtain consent through an intermediary).

[4] Ung argues (via separate Motion) that Vicci Reeves, a data analyst employed by Universal, was a belatedly disclosed expert witness and, accordingly, her Declaration should be stricken. The Court disagrees. Reeves simply rehashes and explains what she found in a number of Universal's documents, and accordingly she has simply provided factual testimony, not expert opinion. See Fed. R. Evid. 702. To use the parlance of Duluth Lighthouse for the Blind v. C.G. Bretting Manufacturing Co., 199 F.R.D. 320, 324 (D. Minn. 2000) (Erickson, M.J.), Reeves is an "employee lay witness" who may testify about the knowledge she has obtained during her employment and explain Universal's records without being transformed into an expert witness. See also Fed. R. Evid. 701 advisory committee's note to 2000 amendment ("[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such . . . testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis."). To accept Ung's argument would mean every employee of a corporation obtains "specialized knowledge" via her employment and, hence, becomes an expert witness when testifying about that knowledge. He cites no authority for such a startling proposition. Contra, e.g., Warner Bros. Entm't, Inc. v. X One X Prods., 644 F.3d 584, 592 (8th Cir. 2011) (permitting employee to offer "lay opinion testimony" based on her employment with plaintiff and review of corporate records); Duluth Lighthouse, 199 F.R.D. at 324.

directly to Universal. This evidence, therefore, suggests that Trina may not be a class member at all and, even if she were, only *some* of the calls placed by Universal could potentially lead to liability, requiring a call-by-call analysis.

Similarly, Universal's business records show, on certain occasions, that references called by the company confirmed that they could be contacted regarding the accounts in question. This is perhaps not surprising, as often these individuals were family members or close friends of the purchasers. (Id. ¶¶ 45-49 & Exs. A-E.) In still other instances, persons such as Ung who were listed as landlords were actually co-buyers of the vehicles and, hence, had provided prior express consent to be called. (Id. ¶ 50.)[5] Finally, Universal relies upon Declarations from three CarHop managers indicating that between (approximately) 25% and 50% of the time, buyers apply for financing with their references physically present at the dealership. (Gaffney Decl. ¶¶ 4-5; Khaimora Decl. ¶¶ 4-5; Greer Decl. ¶¶ 4-5.) While Ung correctly notes that the declarants do not expressly state the references provided consent, here too it is reasonable to infer from the Declarations that some portion of the in-person references either orally expressed their consent to be contacted or voluntarily provided their cell phone numbers, which would suffice to show prior express consent. See In re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992) ("[A]ny [cellular] telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released. . . .

---

[5] It is undisputed that Universal's application process requires buyers to consent to be called on their cell phones using autodialers.

[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given.").

The foregoing shows that the issue of consent is unique to each individual class member. Liability in each instance, or the extent thereof, will hinge on whether the class member orally consented to be called when contacted by Universal; voluntarily provided his or her cell phone number, either directly or through the car purchaser; appeared at the time of the purchase and agreed to be contacted; or provided his or her consent in some other way. Indeed, as in Barrett v. ADT Corp., "the best place to find proof of consent may rest with the [persons called] themselves." No. 2:15-CV-1348, 2016 WL 865672, at *9 (S.D. Ohio Mar. 7, 2016), appeal docketed, No. 16-306 (6th Cir. Mar. 21, 2016). For these reasons, the circumstances surrounding consent are not "susceptible to generalized, class-wide proof." Kristensen v. Credit Payment Sys., 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (citing 2 William B. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)); accord, e.g., Blades v. Monsanto Co., 400 F.3d 562, 572 (8th Cir. 2005) (class certification requires "proof common to the class"). To paraphrase the Supreme Court, "[t]he permutations involving" several different ways consent may have been provided, for more than 1.4 million cell phone calls to thousands of persons across the country, "are nearly endless." Comcast Corp. v. Behrend, __ U.S. __, 133 S. Ct. 1426 (2013). Class certification would be inappropriate under such circumstances, as common questions would not predominate over individual ones. Fed. R. Civ. P. 23(b)(3).[6]

---

[6] Rule 23(a)(2) asks if there is "a single common question," while Rule 23(b)(3) asks if that common question *predominates*. Dukes, 564 U.S. at 359. Though similar, these are distinct

The recent case of Newhart v. Quicken Loans, Inc., No. 9:15-CV-81250, 2016 WL 7118998 (S.D. Fla. Oct. 13, 2016), is instructive. There, the named plaintiff alleged that Quicken, a mortgage company, had violated the TCPA by placing autodialed calls to his cell phone. Quicken had contacted the plaintiff and others to advise them about the possibility of refinancing their home mortgages. In some instances the individuals had provided consent through a related website, others had done so by email, some had consented orally, and still others had not consented at all. The plaintiff moved to certify a class but Newhart denied the motion, as consent simply could not be resolved across the class with common evidence. Id. at *4-5. Indeed, "[a]t trial, Quicken . . . would be entitled to call the borrowers (and others) to prove its consent for any of the challenged calls and the borrowers could, in turn, attempt to refute records or recordings of consent." Id. at *5. For this reason, Newhart joined a "chorus" of other courts "faced with TCPA class actions that have found such individualized inquiries on the consent issue" precluded class certification. Id. (citations omitted). In the Court's view, the same result should obtain here.

Ung offers several arguments in response, but none is persuasive.

- Affirmative defense

Ung first responds that consent is an affirmative defense Universal failed to plead in its Answer, thereby waiving the issue. (Reply at 7-8.) In the Court's view, however,

---

inquiries – predominance "is qualitative rather than quantitative" and "far more demanding" than Rule 23(a)(2)'s "commonality" requirement. Ebert v. Gen. Mills, Inc., 823 F.3d 472, 478-79 (8th Cir. 2016). Accordingly, the Court addresses here the more demanding issue of predominance, that is, whether Ung can show "individual questions [do not] overwhelm the questions common to the class." Id. at 478.

consent is not an affirmative defense; rather, lack of consent is an element of a TCPA claim. This follows directly from the statutory text, which renders it unlawful "to make any call (*other than a call . . . made with the prior express consent of the called party*) using any automatic telephone dialing system . . . to any telephone number assigned to . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). As noted by Judge Magnuson in Zean v. Fairview Health Services, "the plain language" of the statute "classifies lack of prior express consent as an element of a prima facie TCPA claim." 149 F. Supp. 3d 1129, 1132 (D. Minn. 2016); accord, e.g., Smith v. Securus Techs., Inc., 120 F. Supp. 3d 976, 980 (D. Minn. 2015) (Nelson, J.); Smith v. Microsoft Corp., 297 F.R.D. 464, 471 & n.2 (S.D. Cal. 2014). To be sure, Ung correctly notes there is a body of authority to the contrary, see, e.g., Ott v. Mortg. Inv'rs Corp. of Ohio, Inc., 65 F. Supp. 3d 1046, 1065 (D. Ore. 2014) (collecting cases), but in the undersigned's view the most natural reading of the statute makes lack of consent an element the TCPA plaintiff must prove.[7]

Moreover, it appears undisputed that *Ung* never provided consent to Universal, and hence the defense is not relevant to him, but only to putative class members. Yet, he

---

[7] The Court pauses to note that besides the possibility of waiver, it makes no difference whether consent is an element of Ung's prima facie case or if lack thereof is an affirmative defense. See, e.g., Gene & Gene LLC v. BioPay LLC, 541 F.3d 318, 327 (5th Cir. 2008) ("Gene argues that BioPay must establish consent as an affirmative defense; BioPay argues that consent is an element of the cause of action. The district court did not decide this issue, and we do not concern ourselves with it either. An affirmative defense is not per se irrelevant to the predominance inquiry, as the parties seem to believe. We have noted that the predominance of individual issues necessary to decide an affirmative defense may preclude class certification. . . . Whether established by BioPay as an affirmative defense or by Gene as an element of the cause of action, the issue of consent will entirely determine how the proposed class-action trial will be conducted on the merits.") (internal quotation marks and citation omitted).

cites no authority requiring a class-action defendant to assert, before discovery and before a class has been certified, affirmative defenses applying *only* to putative class members and *not* the named plaintiff. Indeed, the Rules of Civil Procedure likely preclude a defendant from asserting such defenses until such time as it possesses adequate factual support for them. See Fed. R. Civ. P. 11(b). Hence, courts have permitted defendants to assert affirmative defenses applicable only to absent putative class members *after* the initial answer to a complaint. See, e.g., O'Sullivan v. AMN Servs., Inc., No. C-12-2125, 2012 WL 2912061, at *8 (N.D. Cal. July 16, 2012) (noting the court was "cognizant of the difficulty of alleging affirmative defenses in a purported class action, where facts may be unavailable as to putative class members prior to discovery," and granting defendant leave to later amend its answer to assert affirmative defenses pertinent to class members). Under the circumstances here, the Court perceives no reason why Universal was required to plead an (alleged) affirmative defense inapplicable to Ung.

In any event, even were Ung correct that consent is an affirmative defense Universal failed to plead, that failure is not necessarily fatal. See, e.g., Friedman & Friedman, Ltd. v. Tim McCandless, Inc., 606 F.3d 494, 498 (8th Cir. 2010) (unpleaded affirmative defense not waived where included in final pretrial order). Accordingly, the Court believes consent remains a viable – indeed, critical – issue in this case.

- Exclusion from the class

Ung argues, in a footnote, that "even if any [class members] did [provide consent], those few persons could simply be excluded from the class." (Reply Mem. at 9 n.4.) But this argument simply proves Universal's point. In order for the Court to determine

whether a putative class member truly belongs in, or should be excluded from, the proposed class, it would have to consider evidence as to that individual's consent to be called (or lack thereof). In other words, "the class inquiry would fracture into mini-trials" to determine whether each individual properly belonged in the class. Newhart, 2016 WL 7118998, at *5. Certification cannot be granted under such circumstances. Id.; see also, e.g., Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3rd Cir. 2013) ("[I]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate.") (internal quotation marks and citations omitted); Warnick v. Dish Network LLC, 301 F.R.D. 551, 556 (D. Colo. 2014) ("If the court must undertake individualized inquiries in order to determine whether a person is a member of the class, the class is not appropriate.").

- Universal's so-called "admission"

Ung argues that Universal has acknowledged "it did not obtain consent to call references." (Reply Mem. at 8.) In support, it cites the deposition testimony of Kathryn Rogholt, Universal's Rule 30(b)(6) designee. Rogholt was asked in her deposition, "the folks that you're actually calling. Do you have their consent?" She answered, "I do not." (Rogholt Dep. at 85.) This "admission," argues Ung, means Universal's consent argument "is irrelevant." (Reply Mem. at 8.)

The problem, however, is that Ung selectively quotes Rogholt's testimony to make it appear she admitted Universal never had consent before calling references. When read together with the questions and answers surrounding the quoted testimony, it becomes evident what Rogholt actually meant, which is something quite different than that posited

by Ung. Context makes clear that Rogholt was testifying that calls to references were placed *after* Universal had received consent *from the customer*, that is, the buyer of the vehicle, on behalf of the references, rather than directly from the references themselves. (Rogholt Dep. at 83 ("Q: I'm just asking what facts you're relying on to support the defenses that you've made in your answer to this lawsuit? A: [] As far as consent, I'm under the impression we have consent from our customers because they provided the . . . reference's information.").)[8] As noted above, an intermediary (such as a vehicle purchaser) may communicate a reference's consent to Universal. Reasonably read, therefore, the quoted testimony from Rogholt does not suggest Universal has "admitted" lack of consent. Rather, the testimony appears to indicate that Universal generally did not have *direct* consent from a reference before placing a call, but instead had received it through the buyer – which is entirely consistent with the other evidence in the record. This is a far cry from Ung's assertion that Universal has effectively conceded the issue.[9]

- <u>Predominance and an injunctive class</u>

Finally, Ung argues that even if consent remains an issue in this case, it does not defeat class certification because Rule 23(a)(2) "only requires the *presence* of common questions, not the *absence* of individual issues." (Reply Mem. at 10 (emphases in

---

[8] Ung castigates Universal for failing to assert consent as an affirmative defense, yet his counsel questioned Rogholt in her deposition about it and other defenses "made in [the] answer to this lawsuit." It is disingenuous to suggest Ung was blindsided by Universal asserting this defense.

[9] Rogholt also testified, consistent with the evidence noted above, that references "often [were] there with the customer at the time of purchase." (Rogholt Dep. at 83.) Hence, even if Ung is correct that Universal lacked consent as a general matter, other evidence in the record, such as Rogholt's deposition testimony, suggests that at least some references nevertheless expressly consented to be called. Thus, Universal would be entitled to offer such evidence with respect to each particular class member.

original).) Accordingly, he contends the issue of consent goes, at most, "only . . . to Rule 23(b)(3)'s predominance requirement." (Id.) But as already noted, Ung must satisfy both Rule 23(a) *and* one of the three subcategories of Rule 23(b). Hence, even if he were correct that some common issues exist here, it would not alter his obligation to show those issues *predominate* over individual ones in order to satisfy Rule 23(b)(3). And for the reasons already noted, consent is too individualized an inquiry, overwhelming any questions common to the class, to warrant certification under Rule 23(b)(3).

Perhaps recognizing this, Ung argues the case may be certified under Rule 23(b)(**2**). (Reply Mem. at 10-11.) As noted above, that Rule provides a class may be certified if the defendant acted in a way applying generally to the class, such that "injunctive relief . . . is appropriate respecting the class as a whole." Ung argues for application of this Rule here, as a sort of "hybrid certification, insulating the [Rule 23](b)(2) class from the money-damage portion of the case." (Id. at 10.)

Although creative, this argument, too, is unavailing. At the outset, it suffers from the same defect as the attempt to certify this case under Rule 23(b)(3): the issue of consent makes it nigh impossible to determine the members of the putative class without a member-by-member analysis and individualized proof. That determination becomes no easier if the *relief* sought by the class changes from damages (under Rule 23(b)(3)) to an injunction (under Rule 23(b)(2)). The "disparate factual circumstances" regarding each class member's consent simply "prevents the class from being cohesive and thus [renders] it unable to be certified under Rule 23(b)(2)." Ebert, 823 F.3d at 481.

Furthermore, the Supreme Court has counseled that Rule 23(b)(2) "does not authorize class certification when each [class] member would be entitled to an individualized award of monetary damages." Dukes, 564 U.S. at 360-61.  There can be no doubt here that class members would be entitled to individual monetary awards based on the number of (allegedly) unlawful calls they received from Universal.  See 47 U.S.C. § 227(b)(3) (providing $500 statutory damages for "each violation" of the statute, which may be trebled for willful or knowing violations).  In addition, where the "primary relief sought" is monetary rather than injunctive, a Rule 23(b)(2) class cannot be certified. Arvitt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1035 (8th Cir. 2010).  Here, the putative class seeks up to $1,500 in statutory damages for each of several hundred thousand calls – in other words, a potential recovery of hundreds of millions of dollars – strongly suggesting this is a case driven by money, not equitable relief.  Indeed, to conclude otherwise would simply be to ignore reality.

Lastly, Ung's plea for an injunction in the Complaint appears to be something of an afterthought, seeking to enjoin Universal from making "communications in violation of the TCPA." (Compl. ¶ 45(c).)  Yet, "[t]o satisfy Rule 23(b)(2), the proposed injunction must be 'more specific that a bare injunction to follow the law.'" Civil Rights Educ. & Enf't Ctr. v. Hospitality Props. Trust, 317 F.R.D. 91, 105 (N.D. Cal. 2016) (quoting Parsons v. Ryan, 754 F.3d 657, 689 n.35 (9th Cir. 2014)); accord, e.g., Shook v. Bd. of Cnty. Commr's, 543 F.3d 597, 604 (10th Cir. 2008).  That is all Ung has offered here.  Indeed, such an injunction would be "illusory," precluding nothing more than what

the TCPA already proscribes. Gilday v. Dubois, 124 F.3d 277, 287 (1st Cir. 1997). Certifying a Rule 23(b)(2) class would therefore be inappropriate.

## CONCLUSION

While Ung is correct that class certification "is normal in litigation under" the TCPA, "there are no invariable rules regarding the suitability of a particular case under . . . the TCPA for class treatment." Gene & Gene LLC v. BioPay LLC, 541 F.3d 318, 328 (5th Cir. 2008). "[T]he unique facts of each case generally will determine whether certification is proper," id., and for the reasons set forth above, the Court concludes the facts of *this* case render it inappropriate for class-action treatment. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Ung's Motion for Class Certification (Doc. No. 54) and his Motion to Strike Untimely Disclosed Witness (Doc. No. 208) are **DENIED**.

Dated: January 24, 2017
                                                           s/Richard H. Kyle
                                                           RICHARD H. KYLE
                                                           United States District Judge